UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT BENNETTS,

        Plaintiff,        Civil No. 12-14640
                               Honorable Thomas L. Ludington
v.

AT&T UMBRELLA PLAN NO. 1,

        Defendant.
_____/

**OPINION AND ORDER DETERMINING THAT DISCOVERY
IS NOT AVAILABLE AND SETTING BRIEFING SCHEDULE**

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., was enacted "to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990). Consistent with this design, "the district court's review is generally based solely upon the administrative record." *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 503 (6th Cir. 2008). Thus, discovery is generally neither necessary nor available. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618–19 (6th Cir. 1998) (Gilman, J., concurring).

The Sixth Circuit recognizes "a narrow exception, however, if additional evidence is necessary to resolve a claimant's procedural challenge to the administrator's decision to deny benefits." *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 806 (6th Cir. 2004) (citing *Wilkins*, 150 F.3d at 618). The question here is whether this narrow exception applies. Plaintiff contends that it does; Defendant asserts that it does not. For the following reasons, Defendant is correct.

I

A

Plaintiff Scott Bennetts began working as a linesman for AT&T in 2001. Am. Compl. ¶ 10. Incident to his employment, Plaintiff was enrolled in an ERISA-qualifying employee benefit plan, Defendant AT&T Umbrella Plan No. 1. *See id*. ¶¶ 4–5. Under the plan, Plaintiff was entitled to short and long-term disability benefits. *Id*. ¶ 8.

AT&T Services, Inc. is the plan's administrator. *See* Summary Plan Description 37, *attached as* Siegel Decl. Ex. 1. It, in turn, has delegated the authority to adjudicate claims to the AT&T Integrated Disability Service Center. *See id.* at 40; *see also* AT&T Integrated Disability Service Center Guide 4, *attached as* Siegel Decl. Ex. 2.

The AT&T Integrated Disability Service Center is administered not by AT&T Services, but by Sedgwick Claims Management Services, Inc. *See* Service Center Guide 4. An independent claims management company, Sedgwick has the "sole responsibility for processing, reviewing, investigating, evaluating, and deciding claims." *See* Siegel Decl. ¶¶ 9, 14.[1]

B

At some point (precisely when is not clear from the present record), Plaintiff was diagnosed with three medical conditions: (1) "Status post cervical laminectomy at C3-4, C5-6 and half of C7"; (2) "Anxiety"; and (3) "Depression." Am. Compl. ¶ 12. His last day of work for AT&T was November 23, 2010. *Id*. ¶ 13. He then began receiving short-term disability benefits. *See id*. ¶ 14.

---

[1] *See also Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (quoted below), *cert. denied*, 133 S. Ct. 2010 (2013); *Tortora v. SBC Commc'ns, Inc.*, 739 F. Supp. 2d 427, 432 (S.D.N.Y. 2010) (same), *aff'd,* 446 F. App'x 335 (2d Cir. 2011).

In April 2011, Plaintiff underwent cervical spine surgery. *Id.* ¶ 16. Afterwards, his physician, Dr. Mark Adams, concluded that Plaintiff is "totally and permanently disabled." *Id.* ¶ 17. Nevertheless, disability benefit payments stopped in November 2011. *Id.* This litigation followed.

### C

Plaintiff filed a one-count complaint in 2012 alleging that the denial of disability benefits violates ERISA. A short time later, Plaintiff filed an amended complaint asserting the same claim, but amending the defendant from AT&T Services to AT&T Umbrella Plan No. 1.

The parties have stipulated that the applicable standard of review is whether the denial of benefits was arbitrary and capricious. They disagree about the availability of discovery.

Plaintiff, for his part, asserts that discovery should be permitted for four reasons. First, "it seems clear on its face that AT&T Integrated Disability Service Center acted in a biased manner. The unit and the 'independent physician advisor' made a determination that [Plaintiff] was not subject to functional limitation from neck and shoulder pain in direct contradiction of [Plaintiff's] treating physician, Dr. Adams." Pl.'s Opening Br. 2. Second, "AT&T and its subsidiary are both administrator and insurer of the long term disability policy." *Id.* Third, "Defendant's failure to contact the Plaintiff's treating physician, Dr. Adams, means that the evidence used to make the decision is incomplete and Plaintiff is unable to rebut it." *Id.* And fourth, "Priscilla Harris demonstrated bias when she failed to revise the Transferable Skill Assessment in light of the restrictions provided by Dr. Adams." *Id.* at 6. Each assertion is addressed in turn. But first, general principles are reviewed.

## II

### A

In an ERISA denial of benefits action, as noted, "the district court's review is generally based solely upon the administrative record." *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 503 (6th Cir. 2008) (quotation marks omitted) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring)). The Sixth Circuit explains:

> Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

*Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). Consequently, discovery is both unnecessary and unauthorized, most of the time. *Wilkins*, 150 F.3d at 618.

The Sixth Circuit, as also noted, recognizes "a narrow exception" to this general rule. *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 806 (6th Cir. 2004) (citing *Wilkins*, 150 F.3d at 618). Discovery is available "if additional evidence is necessary to resolve a claimant's procedural challenge to the administrator's decision to deny benefits." *Id*. Such procedural challenges include "an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618.

But this exception is narrow — the "mere allegation of bias is not sufficient to permit discovery." *Putney*, 111 F. App'x at 807; *see also Huffaker*, 271 F. App'x at 504 ("A claimant cannot obtain discovery beyond the administrative record — even if limited to a procedural challenge — merely by alleging a procedural violation."); *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 486 (6th Cir. 2007) ("Likas supports his claim with conjecture, and a mere allegation of bias is insufficient to 'throw open the doors of discovery' in an ERISA case."); *Moore v.*

*LaFayette Life Ins. Co*., 458 F.3d 416, 431 (6th Cir. 2006) ("[U]ntil a due process violation is at least colorably established, additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible.").

With these general principles in mind, Plaintiff's particular assertions are addressed.

**B**

**1**

First, Plaintiff asserts that Defendant's independent physician advisor, Dr. James Tran, exhibited bias when he reached a medical conclusion "in direct contradiction to the conclusion reached by Dr. Adams." Pl.'s Opening Br. 2. Plaintiff writes that "allowing limited interrogatories and follow-up depositions of Dr. Tran . . . would be appropriate to determine by what means other than bias he reached his conclusion." *Id*. at 4.

Simply pointing out a difference of professional opinion, however, does not colorably establish bias. *See, e.g*., *Kotowski v. Daimler-Chrysler Corp. Long Term Disability Benefit Plan*, 06-15278, 2007 WL 4171238, at *10 (E.D. Mich. Nov. 20, 2007) )(Lawson, J.) ("[T]he plaintiff also contends that Dr. Wolf's disdain for the plaintiff and her treating physician is apparent in his criticism of her pharmaceutical regimen and dismissal of her objections to ECT as unfounded. However, that viewpoint does not represent bias, but only a difference of opinion; *Doley v. Prudential Ins. Co. of Am.*, CIV.A. 05-0277 (JR), 2006 WL 785374, at *3 (D.D.C. Mar. 28, 2006); *cf*. John Langbein, *The German Advantage in Civil Procedure*, 52 U. Chi. L. Rev. 823, 866 n.37 (1985) ("It is true that bias may provoke a difference of opinion; it is false to reason that a difference of opinion must reflect bias.").

Moreover, the parties have stipulated that the standard of review is arbitrary and capricious. "The ultimate question" under this standard "is whether the plan can offer a reasoned

explanation, based on the evidence, for its judgment that a claimant was not 'disabled' within the plan's terms." *Bell v. Ameritech Sickness & Acc. Disability Ben. Plan*, 399 F. App'x 991, 999 (6th Cir. 2010) (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir. 2006)). Therefore, the issue is not what Dr. Tran's concluded, but whether that conclusion was "the result of a deliberate, principled reasoning process and is supported by substantial evidence." *Id*.

Plaintiff is not entitled to discovery based on a mere difference of professional opinion.[2]

**2**

Next, Plaintiff asserts that Defendant exhibited bias because "AT&T and its subsidiary are both administrator and insurer of the long term disability policy." Pl.'s Opening Br. 2.

Plaintiff is correct that a conflict of interest exists when "the entity that administers the plan . . . both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

But Plaintiff is incorrect that Defendant is such an entity. *See* Siegel Decl. ¶¶ 9, 14 (quoted above). As the Ninth Circuit recently observed, "The Plan is funded by AT&T and not Sedgwick, and administered by Sedgwick and not AT&T." *Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2010 (2013); *see also Tortora v. SBC Commc'ns, Inc.*, 739 F. Supp. 2d 427, 432 (S.D.N.Y. 2010) ("Sedgwick is given sole responsibility for administering claims for both STD and LTD Benefits under the Plan. Pursuant to its agreement with AT&T, Sedgwick must meet certain performance benchmarks — including claimant satisfaction — or it may be subject to a monetary penalty. Sedgwick's compensation is

---

[2] The two cases that Plaintiff cites in support of his argument — *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005) and *Hoover v. Provident Life & Accident Insurance Co.*, 290 F.3d 801 (6th Cir. 2002) — are inapposite. As Defendant pointedly observes, neither of these cases address procedural challenges or the need for discovery. *See* Def.'s Br. 8. *Calvert*, 409 F.3d at 292–97 (addressing effect of conflict of interest on whether decision was arbitrary and capricious); *Hoover*, 290 F.3d at 807–10 (addressing applicable standard of review).

not affected by the approval or denial of claims it administers." (footnotes omitted)), *aff'd,* 446 F. App'x 335 (2d Cir. 2011).

Plaintiff is not entitled to discovery based on his conclusory, factually inaccurate assertion that Defendant exhibited bias through a conflict of interest.

### 3

Plaintiff's third argument regarding Defendant's alleged bias is that "[Dr. Tran's] failure to contact the Plaintiffs [sic] treating Physician, Dr. Adams, means that the evidence used to make the decision is incomplete and Plaintiff is unable to properly rebut it." Pl.'s Opening Br. 5. Plaintiff then reiterates that "the court should allow limited discovery in the form of interrogatories and a follow up deposition of Dr. Tran to determine if bias played a role in the his decision." *Id*. Plaintiff is incorrect on both the facts and the law.

#### a

Dr. Tran did in fact contact Dr. Adams. Twice. It was Plaintiff's doctor who didn't contact Dr. Tran. *See* Def.'s Br. 7 n.4 ("Dr. Tran telephoned Dr. Adams's office on two occasions and Plaintiff's vocational rehabilitation counselor James Fuller, M.A., CRC on three occasions, always requesting a call back within 24 hours, and noting that he would complete his report without their input if he did not receive a call back. Neither Dr. Adams nor Mr. Fuller returned Dr. Tran's phone calls."); *see also* Pl.'s Resp. Br. 6 (acknowledging as much).

As a matter of law, Dr. Tran was under no obligation to do so. ERISA has no "requirement that an independent reviewer must contact a treating physician." *Byrd v. Prudential Ins. Co. of Am.*, 758 F. Supp. 2d 492, 516 (M.D. Tenn. 2010). Rather, the Sixth Circuit has repeatedly instructed that "a plan administrator may rely on a file review and is not required to interview treating physicians." *Bell*, 399 F. App'x at 997; *see also Helfman v. GE*

*Grp. Life Assur. Co.*, 573 F.3d 383, 393 (6th Cir. 2009) (noting that "there is nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination" and that "persons conducting a file review are not per se required to interview the treating physician" (quotation marks omitted)); *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) (same).

Of course, not speaking with Plaintiff's treating physician may raise questions about the thoroughness and accuracy of the benefits determination. *See Helfman*, 573 F.3d at 393. Plaintiff will be able to argue this point in asserting that Defendant's decision was arbitrary and capricious.

But Dr. Tran's contacting Plaintiff's treating physician on two separate occasions and not receiving a call back does not colorably establish Dr. Tran's bias (if anything, it suggests a lack of bias). Nor does it suggest a violation of due process.

Plaintiff is not entitled to discovery based on Dr. Adams not returning Dr. Tran's calls.

**b**

Arguing against this conclusion, Plaintiff quotes from *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416 (6th Cir. 2006), where the court observed: "The *Wilkins* panel foresaw occasions in which the procedural process of gathering all pertinent information may have broken down at the administrative level and directed the courts to permit discovery in those cases." *Id.* at 430, *quoted in* Pl.'s Opening Br. 5.

Plaintiff's quotation is accurate, but his reliance is misplaced. In *Moore*, the plaintiff argued that *Wilkins* was inapplicable because of "factual dissimilarities between *Wilkins* and his case." 458 F.3d at 430. The Sixth Circuit disagreed, explaining "these dissimilarities do not make the Court's instructions in *Wilkins* any less applicable to the case at bar. Plaintiff's

arguments about the inapplicability of *Wilkins* all come back to whether Plaintiff had sufficient opportunity to present evidence and arguments to Defendants and to respond to Defendants [sic] contentions — in essence, all due process issues." *Id*.

Here, as noted, Dr. Tran twice attempted to speak with Dr. Adams. But that gentleman did not return Dr. Tran's calls. This chain of events does not suggest a lack of due process afforded by Defendant. Nothing in Dr. Tran's conduct, for example, prevented Plaintiff from having an "opportunity to present evidence and arguments to [Defendant or] to respond to [Defendant's] contentions." *Wilkins*, 458 F.3d at 430. Although under no obligation to do so, *Bell*, 399 F. App'x at 997, Defendant gave Dr. Adams the opportunity to present additional evidence and arguments via telephone interview to Defendant.

Plaintiff is not entitled to discovery based on Dr. Adams not returning Dr. Tran's calls.

**4**

Plaintiff's fourth and final argument is that Defendant's job accommodation specialist, Priscilla Harris, "demonstrated bias when she failed to revise the Transferable Skill Assessment in light of the restrictions provided by Dr. Adams to the Defendant." Pl.'s Opening Br. 6. Plaintiff writes: "Ms. Harris' decision to ignore the most important restriction that Plaintiff was 'permanently off work' looks a lot like bias. Accordingly, limited discovery should be allowed in this case to determine if bias did in fact play a role in her decision." *Id*. at 7.

Like Plaintiff's challenge to Dr. Tran's opinion, merely pointing out that Ms. Harris reached a different conclusion than Dr. Adams does not colorably establish bias. That is, accepting that Dr. Adams opined that Plaintiff is "'permanently off work," this opinion does not describe an objective medical physical condition — it states a conclusion.

Plaintiff has not introduced facts suggesting bias on the part of Ms. Harris.

### III

Accordingly, it is **ORDERED** that Plaintiff is not entitled to discovery in this matter.

It is further **ORDERED** that Defendant's motion for leave to file a sur-reply brief (ECF No. 18) is **DENIED AS MOOT**.

It is further **ORDERED** that cross-motions to reverse or affirm the administrator's decision are due on or before October 1, 2013.

It is further **ORDERED** that on or before August 23, 2013 Defendant must serve a copy of the administrative record on Plaintiff. When Defendant files its cross-motion on the administrative record, it shall file the entire record under seal. Defendant must also furnish a courtesy copy of the administrative record, bound on the left margin, to chambers.

Dated: August 9, 2013

                                                s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 9, 2013.

                                s/Tracy A. Jacobs
                                TRACY A. JACOBS